Ronald A. Marron (175650)
Alexis M. Wood (270200)
Kas L. Gallucci (288709)
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

Christian Levis (*pro hac forthcoming*)
Amanda Fiorilla (*pro hac forthcoming*)
Rachel Isabel Kesten (*pro hac vice forthcoming*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone:  (914) 997-0500
Facsimile:  (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

[*additional counsel on signature page*]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY PAWLUKIEWICZ, JACQUELINE DILANCHYAN, PAIGE MILLER, JAMILLAH DUNN, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| PLANNED PARENTHOOD LOS ANGELES, a California nonprofit public benefit corporation, and PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., a New York not-for-profit corporation, | |
| Defendants. | |

Plaintiffs Amy Pawlukiewicz, Jacqueline Dilanchyan, Paige Miller, and Jamillah Dunn, on behalf of themselves and all others similarly situated, assert the following against Defendants Planned Parenthood Los Angeles and Planned Parenthood Federation of America, Inc. (collectively, "Planned Parenthood" or "Defendants") based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## INTRODUCTION

1.     Planned Parenthood Federation of America, Inc. ("PPFA") proclaims to be the nation's leading provider of affordable health care for women, men, and young people. PPFA provides a wide range of sexual and reproductive health care to millions of people through a national network of more than 600 health centers and clinics operated by their regional affiliates.

2.     Planned Parenthood Los Angeles ("PPLA") is a member-affiliate of PPFA, and is one of the largest providers of comprehensive, reproductive health care services in Los Angeles County.

3.     In connection with its reproductive health care services, PPLA promises to protect its patients' health information and comply with any legal or regulatory requirements.

4.     For instance, PPLA promises that it "understand[s] that health information about you and your health care is personal" such that it is "committed to protecting health information about you."[1] PPLA has a "pledge" in which it promises to maintain the confidentiality of patients' medical information that is "backed-up by federal and state law."

5.     PPFA makes similar representations to patients, stating that it

_____

[1] *See* Privacy Policy, Planned Parenthood Los Angeles, https://www.plannedparenthood.org/planned-parenthood-los-angeles/hipaa (last visited Dec. 8, 2021).

CLASS ACTION COMPLAINT, CASE NO. _____
2

"respect[s] and [is] committed to protecting the privacy of users."[2]

6.     Given the extremely confidential and sensitive nature of the medical services that Planned Parenthood provides to patients—and Planned Parenthood's representations—Plaintiffs and Class members reasonably expected that Planned Parenthood's data security practices complied with relevant laws, regulations, and industry standards, and would be sufficient to protect the type of sensitive information they collected and stored.

7.     But these representations were false. Planned Parenthood did not maintain adequate data security designed to protect the highly sensitive and confidential nature of Plaintiffs' and Class members' personal and medical information.

8.     On October 17, 2021, PPLA identified suspicious activity on its computer network. Despite knowing that its systems had been compromised since mid-October, PPLA waited until November 30, 2021 to notify patients of the data breach (the "Data Breach Notice Letter").  Attached hereto s **Exhibit A** is a copy of the Data Breach Notice Letter transmitted to its patients.

9.     The Data Breach Notice Letter explained that an "unauthorized person" gained access to their network between October 9 – 17, 2021 (the "Breach Period"). The unauthorized person "exfiltrated" files from their systems, including patient names, dates of birth, addresses, and protected health information, including insurance identification numbers, and clinical information, such as diagnosis, treatment, or prescription information (collectively the "e-PHI"). The data breach is estimated to have impacted approximately 400,000 patients.

10.     The Data Breach Notice Letter downplayed the severity of the intrusion and conveniently failed to notify patients that the data breach was caused

---

[2] *See* Privacy Policy, Planned Parenthood, https://www.plannedparenthood.org/privacy-policy (last visited Dec. 8, 2021).

CLASS ACTION COMPLAINT, CASE NO. _____

by ***malware/ransomware***, which is a computer code ***intentionally designed*** to infiltrate systems and gain access to private and sensitive information.

11.     Instead, the Data Breach Notice Letter stated that there was "no evidence that any information . . . has been used for fraudulent purposes" and that patients were only being notified out of "an abundance of caution." But these assurances have no basis in fact, as PPLA cannot know what these hackers have done (or intend to do) with Plaintiffs' and Class members' e-PHI once it was exfiltrated from its systems. Indeed, PPLA contradicts its own statement by then encouraging patients to "review statements you receive from your health insurer and health care providers" given the risk of medical fraud that Plaintiffs and Class members now face.

12.     Doubling down on these omissions and misstatements, John M. Erickson, a spokesman for PPLA, boldly stated there is "no indication this was a targeted attack," despite that the attack used malicious code designed explicitly for this purpose.

13.     Despite PPLA's desire to downplay the severity of the data breach, it has caused immediate, substantial harm to Plaintiffs and Class members.

14.     Medical information, like the highly sensitive and confidential e-PHI compromised here, is some of the most sensitive forms of personal information, as it is immutable and cannot be changed. Planned Parenthood's egregious handling of this confidential and sensitive e-PHI, which is now in the hands of bad actors, constitutes an extreme invasion of privacy. Patients consistently recognize the importance of protecting medical information. A survey by the *Institute for Health Freedom* found that 78% of patients feel it is "very important" that their medical records be kept confidential. As a result of the data breach, Plaintiffs and Class members no longer have control over their e-PHI, which is now forever in the hands of bad actors.

15.     Plaintiffs and Class members also have experienced emotional distress

---

CLASS ACTION COMPLAINT, CASE NO. _____

as a result of the data breach because their e-PHI is now in the hands of bad actors with illicit motives, such as publicly disclosing this information. Bad actors may attempt to "dox" Plaintiffs and Class members, publishing their names, home addresses, and reasons why they went to Planned Parenthood online. The threat of this action in and of itself is emotionally distressing, as many of their friends, loved ones, and family members may not be aware of their specific treatment at Planned Parenthood. As a result of the data breach, they are constantly in a state of fear and/or distress that this information may be made publicly available or extorted against them.

16.    Plaintiffs and Class members are now at an immediate risk of online and even physical harassment, threats, intimidation, and retribution for visiting a Planned Parenthood clinic, especially as their home addresses were disclosed in connection with their sensitive medical information.

17.    Anti-Planned Parenthood actors are known to target facilities, doctors, and patients. In October 2020, a demonstration outside the Planned Parenthood clinic in Walnut Creek, California took a violent turn when armed security guards hired by anti-abortion activists pepper-sprayed counter protesters. The *National Abortion Federation* ("NAF") in their 2019 Violence and Disruption Statistics (the most recent year statistics are available) found that internet harassment rose and hate mail and harassing phone calls more than doubled with providers reporting 3,123 targeted incidents of hate mail and harassing phone calls, rising from 1,388 in 2018. According to the NAF, abortion care providers and staff continued to receive focused threats through phone calls and text messages as well as postal mail and flyers sent not only to health care facilities, but also to their homes. This hate speech often escalates and turns into death threats and threats of harm.

18.    As a result of the data breach, Plaintiffs and Class members have suffered emotional distress, trauma, elevated stress, and anxiety, and remain in constant fear of retaliation, harassment, and other acts of retribution.

---

CLASS ACTION COMPLAINT, CASE NO. _____

19.     Further, given the highly sensitive and confidential nature of the e-PHI compromised by hackers in a malicious attack (i.e., through malware/ransomware), Plaintiffs and Class members will be required to expend significant time and effort to mitigate the effects of the data breach, such as monitoring their credit reports and accounts for fraud.

20.     This risk is ongoing because, unlike a credit card, there is no way to cancel e-PHI. The U.S. Department of Health and Human Services ("HHS") has identified several imminent risks as a result of hackers obtaining patients' e-PHI including: (1) medical identity theft, i.e., the use of a patients' medical information to obtain medical services, such as medical prescriptions, surgery, or other medical treatment, as well as counterfeit settlements against health insurers; (2) the weaponization of medical data, i.e., the use of medical data to threaten, extort, or influence the patient to extort money or disparage someone; (3) financial fraud, i.e., the use of e-PHI to create credit card or bank accounts in the patients' name, taking out loans or lines of credit in the patients' name, or the filing of fraudulent tax documents or insurance information; and (4) cyber campaigns, using the medical data in combination with other information on the dark web to commit fraud, identity theft, conduct phishing or scams, or obtain the patients' credentials for other services. The "unauthorized person" who breached Planned Parenthood's systems can continue to exploit this information at the expense of Plaintiffs and the Class. This ongoing imminent risk can often persist for years, as identity thieves often hold stolen data for long periods of time before using it.

21.     Such careless handling of e-PHI is prohibited by federal and state law. For example, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") requires healthcare providers, like Planned Parenthood, and their business associates to safeguard patient e-PHI through a multifaceted approach that includes, among other things: (a) ensuring the confidentiality, integrity, and availability of all e-PHI they create, receive, maintain or transmit; (b) proactively

identifying and protecting against reasonably anticipated threats to the security or integrity of e-PHI; (c) protecting against reasonably anticipated, impermissible uses or disclosures of e-PHI; (d) putting in place the required administrative, physical and technical safeguards to protect e-PHI; (e) implementing policies and procedures to prevent, detect, contain, and correct security violations; (f) effectively training their workforce regarding the proper handling of e-PHI; and (g) designating individual security and privacy officers to ensure compliance with these policies and procedures.

22.    Planned Parenthood's failure to comply with HIPAA and other laws and/or guidelines as alleged herein by, among other things, failing to take reasonable steps to safeguard patients' highly sensitive and confidential e-PHI, has directly resulted in injury to Plaintiffs and the Class.

23.    Given the secret nature of, among other things: (a) Planned Parenthood's policies, procedures, systems, and controls; (b) the result of the "investigation" into the data breach disclosed in the Data Breach Notice Letter; and (c) communications among Planned Parenthood and/or the "third-party cybersecurity firm [who] was engaged to assist in [their] investigation" concerning the data breach referenced in the Data Breach Notice Letter, Plaintiffs believe that further evidentiary support for their claims will be unearthed after a reasonable opportunity for discovery.

24.    Plaintiffs and Class members bring claims for invasion of their privacy interests, as established through California's privacy laws and California's Constitution. In addition, Planned Parenthood's actions constitute negligence, breach of contract and implied contract, unjust enrichment, as well as violations of several state consumer protection and privacy laws.

25.    Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose highly sensitive and confidential e-PHI was stolen in the data breach. Plaintiffs and Class members seek remedies including but

not limited to statutory damages, compensatory damages, and injunctive relief requiring substantial improvements to Planned Parenthood's security systems.

## PARTIES

### I.    PLAINTIFFS

26.    Plaintiff **Amy Pawlukiewicz** ("Plainiff Pawlukiewicz") is a natural person and citizen of the State of California and a resident of Los Angeles County. Plaintiff Pawlukiewicz received medical treatment at the Planned Parenthood Los Angeles Canoga Park clinic for women's healthcare services in 2020 and paid for services

27.    Plaintiff Pawlukiewicz provided Planned Parenthood with her highly sensitive and confidential e-PHI, including her name, date of birth, address, insurance information, and medical history. Records reflecting Plaintiff Pawlukiewicz's treatment contained additional personal and highly sensitive e-PHI, including the reason(s) for her visit and treatment information. This information, along with other e-PHI associated with Plaintiff Pawlukiewicz's treatment was stored electronically on Planned Parenthood's servers during the Breach Period and as described below, was accessed and exfiltrated without her consent.

28.    On or about November 30, 2021**,** Planned Parenthood Los Angeles notified Plaintiff Pawlukiewicz that her highly sensitive and confidential e-PHI was compromised as a result of the data breach.

29.    Given that Plaintiff Pawlukiewicz's highly sensitive and confidential e-PHI was accessed and exfiltrated without her consent as a result of the data breach, Plaintiff Pawlukiewicz has suffered concrete harm, including: (1) the unauthorized disclosure of her private health information to third parties; (2) the imminent risk of fraud and identity theft; (3) the intrusion upon seclusion and violation of her reasonable expectation of privacy in such highly sensitive medical information, such as that related to her medical history and treatment; (4) and the

increased risk of the threat of online and physical harassment and retribution for utilizing Planned Parenthood's reproductive health care services; and (5) emotional distress.

30.    Plaintiff **Jacqueline Dilanchyan** ("Plaintiff Dilanchyan") is a natural person and citizen of the State of California and a resident of Los Angeles County. Plaintiff Dilanchyan received medical treatment at the Planned Parenthood Los Angeles Burbank clinic for women's healthcare services in 2018 and paid for services.

31.    Plaintiff Dilanchyan provided Planned Parenthood with her highly sensitive and confidential e-PHI, including her name, date of birth, address, insurance information, and medical history. Records reflecting Plaintiff Dilanchyan's treatment contained additional personal and highly sensitive e-PHI, including the reason(s) for her visit and treatment information. This information, along with other e-PHI associated with Plaintiff Dilanchyan's treatment was stored electronically on Planned Parenthood's servers during the Breach Period and as described below, was accessed and exfiltrated without her consent.

32.    On or about November 30, 2021**,** Planned Parenthood Los Angeles notified Plaintiff Dilanchyan that her highly sensitive and confidential e-PHI was compromised as a result of the data breach.

33.    Given that Plaintiff Dilanchyan's highly sensitive and confidential e-PHI was accessed and exfiltrated without her consent as a result of the data breach, Plaintiff Dilanchyan has suffered concrete harm, including: (1) the unauthorized disclosure of her private health information to third parties; (2) the imminent risk of fraud and identity theft; (3) the intrusion upon seclusion and violation of her reasonable expectation of privacy in such highly sensitive medical information, such as that related to her medical history and treatment; (4) and the increased risk of the threat of online and physical harassment and retribution for utilizing Planned Parenthood's reproductive health care services; and (5) emotional distress.

CLASS ACTION COMPLAINT, CASE NO. _____

34.     Plaintiff **Paige Miller** ("Plaintiff Miller") is a natural person and citizen of the State of California and a resident of Los Angeles County. Plaintiff Miller received medical treatment at the Planned Parenthood Los Angeles Lawndale clinic for women's healthcare services several times since 2018.

35.     Plaintiff Miller provided Planned Parenthood with her highly sensitive and confidential e-PHI, including her name, date of birth, address, insurance information, and medical history. Records reflecting Plaintiff Miller's treatment contained additional personal and highly sensitive e-PHI, including the reason(s) for her visit and treatment information. This information, along with other e-PHI associated with Plaintiff Miller's treatment was stored electronically on Planned Parenthood's servers during the Breach Period and as described below, was accessed and exfiltrated without her consent.

36.     On or about November 30, 2021**,** Planned Parenthood Los Angeles notified Plaintiff Miller that her highly sensitive and confidential e-PHI was compromised as a result of the data breach.

37.     Given that Plaintiff Miller's highly sensitive and confidential e-PHI was accessed and exfiltrated without her consent as a result of the data breach, Plaintiff Miller has suffered concrete harm, including: (1) the unauthorized disclosure of her private health information to third parties; (2) the imminent risk of fraud and identity theft; (3) the intrusion upon seclusion and violation of her reasonable expectation of privacy in such highly sensitive medical information, such as that related to her medical history and treatment; (4) and the increased risk of the threat of online and physical harassment and retribution for utilizing Planned Parenthood's reproductive health care services; and (5) emotional distress.

38.     Plaintiff **Jamillah Dunn** ("Plaintiff Dunn") is a natural person and citizen of the State of California and a resident of Los Angeles County. Plaintiff Dunn received medical treatment at the Planned Parenthood Los Angeles La Brea, West Hollywood and Los Angeles clinics for women's healthcare services several

times for over twenty-five years.

39.     Plaintiff Dunn provided Planned Parenthood with her highly sensitive and confidential e-PHI, including her name, date of birth, address, insurance information, and medical history. Records reflecting Plaintiff Dunn's treatment contained additional personal and highly sensitive e-PHI, including the reason(s) for her visit and treatment information. This information, along with other e-PHI associated with Plaintiff Dunn's treatment was stored electronically on Planned Parenthood's servers during the Breach Period and as described below, was accessed and exfiltrated without her consent.

40.     On or about November 30, 2021, Planned Parenthood Los Angeles notified Plaintiff Dunn that her highly sensitive and confidential e-PHI was compromised as a result of the data breach.

41.     Given that Plaintiff Dunn's highly sensitive and confidential e-PHI was accessed and exfiltrated without her consent as a result of the data breach, Plaintiff Dunn has suffered concrete harm, including: (1) the unauthorized disclosure of her private health information to third parties; (2) the imminent risk of fraud and identity theft; (3) the intrusion upon seclusion and violation of her reasonable expectation of privacy in such highly sensitive medical information, such as that related to her medical history and treatment; (4) and the increased risk of the threat of online and physical harassment and retribution for utilizing Planned Parenthood's reproductive health care services; and (5) emotional distress.

## II.     DEFENDANTS

### A.     PPFA

42.     Defendant **Planned Parenthood Federation of America, Inc**. ("PPFA") is a New York not-for-profit corporation with principal executive offices located at 123 William Street, New York, NY 10038.

43.     PPFA is the leading national organization dedicated to offering affordable health care services, public education, and advocacy in the field of

reproductive health care. PPFA's core mission is to ensure the provision of high-quality, non-judgmental comprehensive reproductive health care services, to provide educational programs relating to reproductive and sexual health, and to advocate for public policies to ensure access to health services—including for individuals with low incomes or from underserved communities. PPFA also engages in public education about, and advocacy in favor of, the right to access safe and legal abortions.

44.    PPFA is a membership organization composed of more than fifty affiliate organizations, with a Board of Directors. The member-affiliates are responsible for setting the long-range goals and priorities of PPFA and for electing the PPFA Board of Directors. Through their participation and voting, PPFA's member-affiliates control the mission and direction of PPFA. Historically PPFA's member affiliates were required to contribute financially to PPFA. Each affiliate of PPFA has the right to use the Planned Parenthood name and service mark.

45.    Cumulatively, PPFA's member-affiliates operate more than 600 health centers that provide a wide range of reproductive health care services and education. Among them are contraception (including long-acting reversible contraceptives ("LARCs")), contraceptive counseling, physical exams, clinical breast exams, screening for cervical and testicular cancers, testing and treatment for sexually transmitted infections ("STIs"), treatment of sexual dysfunction in men, pregnancy testing and counseling, pre-natal care, testing and treatment for HIV, gender affirming care including hormone therapy for transgender patients, some sterilization services (including vasectomies), colposcopies, abortion, and health education services. PPFA's affiliates also provide referrals for these services if they are unable to provide them at their health centers.

46.    In 2019, Planned Parenthood affiliates provided more than 10.4 million services to approximately 2.4 million patients. Planned Parenthood affiliates provided more than 5.4 million STI testing and treatment services, more

than 2.5 million contraceptive services, administered more than 598,000 cancer screenings and preventive services such as breast exams and cervical screens (Pap tests), conducted more than 860,000 HIV tests, and performed more than 350,000 abortions.

47.    An estimated one out of every three women nationally has received care from a Planned Parenthood affiliate at least once in her life.

**B.    PPLA**

48.    Defendant **Planned Parenthood Los Angeles** ("PPLA") is a California nonprofit public benefit corporation with principal executive offices located at 400 W. 30th Street, Los Angeles, CA 90007.

49.    PPLA is a member-affiliate of PPFA. PPLA utilizes the Planned Parenthood name and service mark on its website, messaging, and communications, including on the Data Breach Notice Letter sent to Plaintiffs and the Class. In addition, the CEO of PPLA, Susan Dunlap, is a member of PPFA's Board of Directors.

50.    According to PPLA, its mission "is to provide convenient and affordable access to a comprehensive range of quality reproductive health care and sexual health information through patient services, education and advocacy."

51.    PPLA is one of the largest providers of comprehensive, reproductive health care services in Los Angeles County. PPLA's reproductive health care services include but are not limited to, pregnancy testing and services, STI testing and treatment, contraception services, abortion and emergency contraception, as well as general men's, women's, and LGBT health care services.

52.    PPLA operates twenty-one California (21) health centers. Of the women, men, and young people who rely on PPLA for care, 84% receive family planning services and 78% are living at or below the federal poverty level.

53.    PPLA represents that "Planned Parenthood providers are among the best-trained and most experienced in the field of reproductive health care" and that

it "offer[s] a level of nonjudgmental care that's hard to find anywhere else." Further, PPLA pledges to protect its patients' health information and comply with any legal or regulatory requirements. PPLA states that it "understand[s] that health information about you and your health care is personal" such that it is "committed to protecting health information about you." PPLA's pledge promises to maintain the confidentiality of patients' medical information that is "backed-up by federal and state law." However, despite this pledge, PPLA failed to secure its patients highly sensitive and confidential e-PHI, which has been exfiltrated which was seen by unauthorized third parties and can now be weaponized and used to harass and threaten the patients who used its services.

54.    Upon information and belief, PPLA and PPFA share common servers, networks, systems, databases, and/or healthcare and patient management systems.

55.    PPLA and PPFA are collectively referred to throughout the Complaint as "Planned Parenthood" or "Defendants."

## JURISDICTION AND VENUE

56.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because there are more than 100 putative members of the Classes, as defined below, a significant portion of putative Class members are citizens of a state different from Defendants, and the amount in controversy for the Classes exceeds $5,000,000 exclusive of interest and costs. Given the estimated size of the class (i.e., approximately 400,000 patients), statutory damages available to Plaintiffs and Class members under the CMIA far exceed the $5 million threshold. As does the likely value of any injunctive relief, including changes to Planned Parenthood's systems and procedures to prevent future data breaches, and the value of Plaintiffs' and Class members' right to seclusion and non-disclosure of

their confidential and sensitive e-PHI.[3]

57.     This Court has personal jurisdiction over PPLA because PPLA
maintains its principal executive offices in Los Angeles, California and is a
registered California corporation.

58.     This Court has personal jurisdiction over PPFA because PPFA has
sufficient minimum contacts in California. For example, PPFA purposefully
availed itself of the privileges and benefits associated with conducting business in
this state, by, among other things, reaching into California to establish an affiliated
partnership with its PPFA member-affiliate—PPLA. Under PPFA's bylaws,
historically PPFA's member-affiliates, including PPLA are also required to
contribute financially to PPFA, and affiliate dues contribute to PPFA's financial
support. PPFA allows its affiliates, including PPLA the right to use the Planned
Parenthood name and service mark in California, which PPLA displays on its
website. Further, upon information and belief, PPFA shares common servers,
networks, systems, databases, and/or healthcare and patient management systems
with PPLA.

59.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2)
because Defendants transact business in this District and a substantial portion of
the events giving rise to the claims occurred in this District.

_____

[3] For purposes of this Complaint, Plaintiffs estimate the value of these rights to be
worth at least $10 million by multiplying the average cost to protect against such a
breach using identity theft insurance (approximately $25 to $60 per person, per
year) by the approximately 400,000 persons whose e-PHI was accessed without
consent. Plaintiffs reserve their rights to revise or supplement this estimate
following a reasonable opportunity for discovery.

# FACTUAL BACKGROUND

## III.  THE PLANNED PARENTHOOD DATA BREACH

60.    In connection with its services, PPLA has consistently promised patients that it pledges to protect its patients' health information and comply with any legal or regulatory requirements. For instance, PPLA promises that it "understand[s] that health information about you and your health care is personal" such that it is "committed to protecting health information about you."[4] As part of PPLA's "pledge," it promises to maintain the confidentiality of patients' medical information and that it is "backed-up by federal and state law."

61.    PPLA has dedicated a section on its website to apprise its patients, including Plaintiffs and Class members, of the permissible uses and disclosure of their medical records.

62.    More specifically, PPLA posts on its website a "HIPAA Privacy Policy | NOTICE OF HEALTH INFORMATION PRIVACY PRACTICES" dated September 1, 2014 (the "Privacy Policy"), which PPLA admits they are required to comply with. In its Privacy Policy, PPLA pledges to protect its patients' health information and states "[w]e understand that health information about you and your health care is personal. We are committed to protecting health information about you."

63.    Specifically, PPLA's "pledge" states "[o]ur pledge regarding your health information is backed-up by federal and state law. The privacy and security provisions of the federal Health Insurance Portability and Accountability Act ("HIPAA") require us to: Make sure that health information that identifies you is kept private; Make available this notice of our legal duties and privacy practices with respect to health information about you; and Follow the terms of the notice

---

[4] *See* Privacy Policy Planned Parenthood Los Angeles, https://www.plannedparenthood.org/planned-parenthood-los-angeles/hipaa (last visited Dec. 8, 2021).

that is currently in effect."

64.    These promises were false. As a result of Planned Parenthood's deficient data security, between October 9 – 17, 2021, unauthorized third parties using malicious code, i.e., malware and ransomware, gained access and exfiltrated Plaintiffs' and Class members' highly sensitive and confidential e-PHI. As a result, these unauthorized third parties have seen Plaintiffs' and Class members highly sensitive and confidential e-PHI.

65.    Week a month later, on November 30, 2021, PPLA finally notified patients, including Plaintiffs, of the data breach and that their highly sensitive and confidential e-PHI was compromised.

66.    PPLA determined that the "unauthorized person" installed malware/ransomware to gain access to its network and exfiltrated files from its systems. Ransomware is a malicious computer code intentionally designed to block an organization's access to its own computer network to extort a ransom. Malware is malicious computer code explicitly designed to exfiltrate files or otherwise cause harm to computer networks.

67.    PPLA determined that the files exfiltrated by bad actors included patients' names, and one or more of the following: dates of birth, addresses, and protected health information including insurance identification numbers, and clinical data, such as diagnosis, treatment, or prescription information.

68.    While PPLA's "Notice of Patient Privacy Incident" included on its website indicates that the unauthorized person "installed malware/ransomware and exfiltrated some files from our systems," PPLA's Data Breach Notice Letter to Plaintiffs downplays the intrusion and fails to include the relevant information that malware/ransomware was installed. This is especially problematic as malware and ransomware are notoriously used by bad actors with malintent.

69.    The cyber criminals who committed the data breach viewed, obtained, and exfiltrated Plaintiffs' and Class members' highly sensitive and confidential e-

---

PHI for malicious purposes and now have it available to them to sell to other bad actors or otherwise misuse the information, including "doxing" Plaintiffs and Class members. This "doxing" can include publishing their names, home addresses, and reasons why they went to Planned Parenthood online.

70.    Significantly, Planned Parenthood does not represent that Plaintiffs' and Class members' e-PHI was encrypted, password protected, or secured in some other manner that would prevent the malicious actors from actually using the information. Upon information and belief, these malicious actors who gained Plaintiffs' and Class members' e-PHI now have unfettered access.

## IV.  PLANNED PARENTHOOD'S HISTORY OF DATA BREACHES

71.    This is not the first time PPFA, or its affiliates experienced a data breach as a result of their severely deficient data security. PPFA and its affiliates have been the target of hackers and anti-abortion groups for many years because of its status as a prominent nationally recognized organization that advocates for reproductive rights.

72.    In July 2015, PPFA was targeted by a group of hackers called "3301" who gained access to the names and contact information, including email addresses and passwords, of hundreds of PPFA employees across the nation. The 3301 hackers also planned to deface the PPFA website and "dump" multiple of their databases, i.e., expose it to the public. The 3301 hackers then exposed the users' usernames, emails, and passwords.

73.    In 2020, PPFA's software vendor, Blackbaud, Inc., experienced a data breach between February 7 and May 20, 2020 that compromised the personal information of donors of several affiliated Planned Parenthoods. The perpetrators of that attack held the data for ransom.

74.    Most recently, on April 9, 2021, PPFA member-affiliate Planned Parenthood of Metropolitan Washington D.C., revealed that it suffered a data breach between August 27, 2020 and October 8, 2020, whereby unauthorized

---

CLASS ACTION COMPLAINT, CASE NO. _____

actors gained access to their network and acquired patient and donor data for an undisclosed number of people. The data compromised included names, addresses, dates of birth, diagnoses, treatments, prescription information, social security numbers, and financial information. Additionally, among the leaked documents were check images with donor's names, bank account, and routing numbers. In addition to patient information, the leaked donor information provided those bad actors additional ammunition to weaponize the leaked data as it exposed those who had contributed to reproductive rights causes as targets for harassment and intimidation.

75.     Given the numerous instances in which Planned Parenthood has failed to protect patients and employees, it was on notice that its data security systems were deficient. Despite this, Planned Parenthood has continued to maintain woefully deficient data security, which resulted in Plaintiffs' and Class members' highly sensitive and confidential e-PHI being compromised by bad actors.

## V.    PLANNED PARENTHOOD FAILED TO COMPLY WITH HIPAA, THE NATIONAL STANDARD FOR PROTECTING PRIVATE HEALTH INFORMATION

76.     HIPAA requires the healthcare industry to have a generally accepted set of security standards for protecting health information. HIPAA defines Protected Health Information ("PHI") as individually identifiable health information and e-PHI that is transmitted by electronic media or maintained in electronic media. This protected information includes: names, dates, phone numbers, fax numbers, email addresses, SSNs, medical record numbers, health insurance beneficiary numbers, account numbers, certificate/license numbers, vehicle identifiers, device identifiers and serial numbers, URLs, IP addresses, biometric identifiers, photographs, and any other unique identifying number, characteristic, or code.

77.     To this end, HHS promulgated the HIPAA Privacy Rule in 2000 and

---

the HIPAA Security Rule in 2003. The security standards for the protection of e-PHI, known as "the Security Rule," establish a national set of security standards for protecting certain health information that is held or transferred in electronic form. The Security Rule operationalizes the protections contained in the Privacy Rule by addressing the technical and non-technical safeguards that organizations called "covered entities" must put in place to secure individuals' e-PHI.

78.     Defendants are either an entity covered by HIPAA, *see* 45 C.F.R. § 160.102, or "business associates" covered by HIPAA, *see* 45 C.F.R. § 160.103, and therefore must comply with the HIPAA Privacy Rule and Security Rule, *see* 45 C.F.R. Part 160 and Part 164, Subparts A, C, and E.

79.     HIPAA limits the permissible uses of e-PHI and prohibits the unauthorized disclosure of e-PHI. *See* 45 C.F.R. § 164.502. HIPAA also requires that covered entities implement appropriate safeguards to protect this information. *See* 45 C.F.R. § 164.530(c)(1).

80.     The electronically stored healthcare information accessed by unauthorized third parties on Planned Parenthood's servers are e-PHI under the HIPAA Privacy Rule and the Security Rule, which protects all e-PHI a covered entity "creates, receives, maintains or transmits" in electronic form. 45 C.F.R. § 160.103.

81.     The Security Rule requires covered entities, including Planned Parenthood, to implement and maintain appropriate administrative, technical, and physical safeguards for protecting e-PHI. *See* 45 C.F.R. § 164.530(c)(1). Among other things, the Security Rule requires Planned Parenthood to identify and "[p]rotect against any reasonably anticipated threats or hazards to the security or integrity of [the] information" and "[p]rotect against any reasonably anticipated uses or disclosures." 45 C.F.R. § 164.306.

82.     HIPAA also obligates Planned Parenthood to implement policies and procedures to prevent, detect, contain, and correct security violations. *See* 45

C.F.R. § 164.308(a)(1)(i).

83.    HIPAA further obligates Planned Parenthood to ensure that their workforce comply with HIPAA security standard rules, *see* 45 C.F.R. § 164.306(a)(4), to effectively train their workforces on the policies and procedures with respect to protected health information, as necessary and appropriate for those individuals to carry out their functions and maintain the security of protected health information. *See* 45 C.F.R. § 164.530(b)(1).

84.    Planned Parenthood failed to comply with these HIPAA rules. Specifically, Planned Parenthood failed to put in place the necessary technical and non-technical safeguards required to protect Plaintiffs' and Class members' highly sensitive and confidential e-PHI.

## VI.  PLANNED PARENTHOOD VIOLATED THE FTC ACT

85.    Planned Parenthood was (and still is) prohibited from engaging in "unfair or deceptive acts or practices in or affecting commerce" by the Federal Trade Commission Act, 15 U.S.C. § 45. Their failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice that violates this rule.

86.    In 2007, the FTC published guidelines establishing reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

87.     The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

88.     Planned Parenthood was aware of and failed to follow the FTC guidelines and failed to adequately secure patients' data stored on their servers. Furthermore, by failing to have reasonable data security measures in place, Planned Parenthood engaged in an unfair act or practice within the meaning of § 5 of the FTC Act.

89.     In addition to the FTC Act, Planned Parenthood had a duty to adopt reasonable data security measures in accordance with federal law under HIPAA as well as the laws of the various states in which it operates, including the CMIA

## VII.  PLANNED PARENTHOOD VIOLATED THEIR COMMON LAW DUTY OF REASONABLE CARE

90.     In addition to obligations imposed by federal and state law, Planned Parenthood owed and continues to owe a common law duty to Plaintiffs and Class members—who entrusted Planned Parenthood with their highly sensitive and confidential e-PHI—to exercise reasonable care in receiving, maintaining, storing, and deleting the e-PHI in Planned Parenthood's possession.

91.     Planned Parenthood owed and continues to owe a duty to prevent Plaintiffs' and Class members' highly sensitive and confidential e-PHI from being compromised, lost, stolen, accessed, or misused by unauthorized third parties. An essential part of Planned Parenthood's duty was (and is) the obligation to provide reasonable security consistent with current industry best practices and requirements, and to ensure information technology systems and networks, in addition to the personnel responsible for those systems and networks, adequately protected and continue to protect Plaintiffs' and Class members' highly sensitive and confidential e-PHI.

92.     Planned Parenthood owed a duty to Plaintiffs and Class members, who entrusted Planned Parenthood with their highly sensitive and confidential e-PHI, to design, maintain, and test the information technology systems that housed Plaintiffs' and Class members' highly sensitive and confidential e-PHI, to ensure that the highly sensitive and confidential e-PHI in Planned Parenthood's possession was adequately secured and protected.

93.     Planned Parenthood owed a duty to Plaintiffs and Class members to create, implement, and maintain reasonable data security practices and procedures sufficient to protect the highly sensitive and confidential e-PHI stored in Planned Parenthood's computer systems. This duty required Planned Parenthood to adequately train employees and others with access to Plaintiffs' and Class members' highly sensitive and confidential e-PHI on the procedures and practices necessary to safeguard such sensitive information.

94.     Planned Parenthood owed a duty to Plaintiffs and Class members to implement processes that would enable Planned Parenthood to timely detect a breach of its information technology systems, and a duty to act upon any data security warnings or red flags detected by such systems in a timely fashion.

95.     Planned Parenthood owed a duty to Plaintiffs and Class members to disclose when and if Planned Parenthood's information technology systems and data security practices were not sufficiently adequate to protect and safeguard Plaintiffs' and Class members' highly sensitive and confidential e-PHI.

96.     Planned Parenthood violated these duties. Planned Parenthood did not implement measures designed to timely detect a breach of their information technology systems, as required to adequately safeguard Plaintiffs' and Class members' highly sensitive and confidential e-PHI. Planned Parenthood also violated their duty to create, implement, and maintain reasonable data security practices and procedures sufficient to protect Plaintiffs' and Class members' highly sensitive and confidential e-PHI. As the Data Breach Notice Letter states, "a third-

CLASS ACTION COMPLAINT, CASE NO. _____
23

party cybersecurity firm was engaged to assist in our investigation," *after the breach* occurred. Planned Parenthood should have taken these steps *beforehand* to protect the highly sensitive and confidential e-PHI in their possession and prevent the breach from occurring, as required under HIPAA and FTC guidelines, as well as other state and federal law and/or regulations.

97.    Planned Parenthood owed a duty to Plaintiffs and Class members to timely disclose the fact that a data breach, resulting in unauthorized access to their highly sensitive and confidential e-PHI, had occurred.

## VIII.  PLANNED PARENTHOOD FAILED TO COMPLY WITH THEIR OWN PRIVACY POLICY AND OTHER REPRESENTATIONS

98.    PPLA's Privacy Policy lists the permitted uses and disclosures of patients' highly sensitive and confidential e-PHI and informs patients that e-PHI will be used for: (i) treatment; (ii) payment; (iii) healthcare operations; (iv) appointment reminders; (v) to individuals involved in their care or payment for their care; (vi) research; (vii) fundraising activities; (viii) as required by law; (ix) to avert a serious threat to health or safety; (x) military and veterans; (xi) workers' compensation; (xii)  public health risks; (xiii) health oversight activities; (xiv) lawsuits and disputes; (xv) law enforcement; (xvi) inmates; and (xvii) coroners, health examiners and funeral directors.

99.    PPLA's Privacy Policy further states that the "following uses and disclosures of health information will be made only with your written permission: [u]ses and disclosures of protected health information for marketing purposes; [u]ses and disclosures that constitute the sale of your protected health information; [and] [o]ther uses and disclosures of health information not covered by this Notice or the laws that apply to us."

100.   Critically, none of the permissible uses in PPLA's Privacy Policy of e-PHI include granting unfettered access to unauthorized third parties who intend to misuse such information for illicit purposes.

---

CLASS ACTION COMPLAINT, CASE NO. _____

101.   PPLA's Privacy Policy further assuages patients' concerns regarding unauthorized disclosure of their personal information by allowing them to revoke any written authorizations: "[i]f you provide us permission to use or disclose health information about you, you may revoke that permission, in writing, at any time.  If you revoke your permission, we will no longer use or disclose health information about you for the reasons covered by your written authorization."

102.   By these representations in the Privacy Policy, PPLA affirmatively— and misleadingly—assured patients, including Plaintiffs and the Class members, that they had the ability to control the dissemination of their highly sensitive and confidential e-PHI and to restrict its use and access by third parties.

103.   The Privacy Policy also expressly guaranteed PPLA would safeguard patients' highly sensitive and confidential e-PHI consistent with the applicable laws and regulations.

104.   However, PPLA failed to safeguard patients' highly sensitive and confidential e-PHI in violation of their own Privacy Policy and applicable law and regulations, as confirmed by the Notice of Patient Privacy Incident, in which PPLA admits that an "unauthorized person gained access to our network between October 9, 2021 and October 17, 2021, installed malware/ransomware and exfiltrated some files from our systems during that time." In fact, PPLA failed to take any steps to safeguard Plaintiffs' and Class members' highly sensitive and confidential e-PHI until after the data breach occurred.

105.   PPLA failure to implement appropriate security measures and adequately safeguard Plaintiffs' and Class members' highly sensitive and confidential e-PHI violated the terms of their own Privacy Policy and other representations.

---

## IX.  THE DATA BREACH DAMAGES PLAINTIFFS AND CLASS MEMBERS

106.  As a result of Planned Parenthood's deficient security measures, Plaintiffs and Class members have been harmed by the compromise of their highly sensitive and confidential e-PHI.

107.  Several criminal syndicates, including Ukraine's UNC1878 and China's Dynamite Panda, along with various state-sponsored groups, are known to target hospitals and healthcare providers based on the high value associated with e-PHI, both as a revenue stream (e.g., when sold on the dark web, or used to commit identify theft) and as a tool for executing future hacks (e.g., by impersonating users or providing information that can be useful in cracking passwords or security questions). Plaintiffs reasonably anticipate that the identity of the hackers involved in the data breach will be revealed in discovery.

108.  This exfiltrated highly sensitive and confidential e-PHI can be used for malicious purposes, including doxing, harassment, financial fraud, medical identity theft, identity theft, insurance fraud, and crafting convincing phishing messages. Plaintiffs and Class members face an imminent risk of:

   a. *medical identity theft*—the use of another person's medical information to obtain a medical service;

   b. *weaponizing of medical data*—the use of sensitive medical data to threaten, harass, extort, or influence individuals;

   c. *financial fraud*—the use of personally identifiable information contained in medical records to create credit card or bank or insurance profiles to facilitate financial and insurance fraud; and,

   d. *cyber campaigns*—the use of medical data as complementary data in future hacking campaigns.

109.  As a result, e-PHI has become increasingly valuable on the black market. In fact, it is more valuable than any other type of record on the dark web.

CLASS ACTION COMPLAINT, CASE NO. _____

For example, according to *Forbes*, as of April 14, 2017, the going rate for an SSN is $.010 cents and a credit card number is worth $.025 cents, but medical records containing e-PHI could be worth hundreds or even thousands of dollars. For example, in April of 2019, HHS estimated that the average price of medical records containing e-PHI ranged between $250 and $1,000.

110.   The Fifth Annual Study on Medical Identity Theft conducted by the *Ponemon Institute* concluded that medical identity theft alone costs the average victim $13,500 to fix.

111.   According to *The World Privacy Forum*, a nonprofit public interest group, one of the reasons for this price differential is that criminals are able to extract larger illicit profits using medical records than they are for a credit card or SSN. For example, while a credit card or SSN typically yields around $2,000 before being canceled or changed, an individual's e-PHI typically yields $20,000 or more. This is because, in addition to the fact that healthcare data and e-PHI are immutable (e.g., you cannot cancel your medical records), healthcare data breaches often take much longer to be discovered, allowing thieves to leverage e-PHI for an extended period of time.

112.   Further, identity thieves can combine data stolen in the data breach with other information about Plaintiffs and Class members gathered from underground sources, public sources, or even Plaintiffs' and Class members' social media accounts. Thieves can use the combined data to send highly targeted phishing emails to Plaintiffs and Class members to obtain more sensitive information, placing Plaintiffs and Class members at further risk of harm. Thieves can use the combined data to commit potential crimes, including opening new financial accounts in Plaintiffs' and Class members' names, making false insurance claims using Plaintiffs' and Class members' insurance information, taking out loans in Plaintiffs' and Class members' names, using Plaintiffs' and Class members' information to obtain government benefits, filing fraudulent tax returns

using Plaintiffs' and Class members' information, obtaining driver's licenses in Plaintiffs' Class members' names but with another person's photograph.

113.   Researchers at HealthITSecurity.com have also reported criminals selling illicit access to compromised healthcare systems on the black market, which would give other criminals "access to their own post-exploitation activity, such as obtaining and exfiltrating sensitive information, infecting other devices in the compromised network, or using connections and information in the compromised network to exploit trusted relationships between the targeted organizations and other entities to compromise additional networks."

114.   Given the value of e-PHI, health care providers such as Planned Parenthood are prime targets for cyberattacks, like the data breach that occurred here. Indeed, one recent report indicates that the number of healthcare cyberattacks in the United States has increased by 55% between 2020 and 2021 alone.

115.   Furthermore, with the news of the U.S. Supreme Court taking up the politically charged Mississippi abortion law this court term and Texas's recent abortion law, abortion providers such as Planned Parenthood are likely targets for cyberattacks like the data breach that occurred here given the nature of the reproductive healthcare services they provide and the patients who utilize those services.

116.   More so than in a typical healthcare data breach, cybercriminals can weaponize the highly sensitive and confidential e-PHI involved here to specifically target and harass those patients, including Plaintiffs and Class members who utilized Planned Parenthood's reproductive healthcare services.

117.   In 1997, an anti-abortion extremist named Neal Horsley created a chilling website called the "Nuremberg Files." The site contained the names of about 200 working abortion providers with their approximate locations alongside GIFs of dripping blood and encouragements to "SEND US MORE NAMES!" In almost scorecard like fashion, if one of the providers was injured, his or her font

color turned from black to grey. If they were killed, their name was struck through. David S. Cohen, Drexel University professor and co-author of the book Living in the Crosshairs: The Untold Stories of Anti-Abortion Terrorism, has said that publishing a list "is just another way for someone out there who wants to do harm — and we know those people exist — to get more information that facilitates their harm."

118.    Plaintiffs and Class members who utilized Planned Parenthood's services will now have to be on extremely high alert to protect their names and addresses (which was one of the forms of e-PHI involved in the data breach) from being made public to bad actors who may seek to threaten, harass, retaliate, or intimidate them. No patient who utilizes Planned Parenthood should have to fear for their lives or safety.

119.    As to the imminent risk of fraud and identity theft, Plaintiffs and Class members will be required to spend substantial amounts of time monitoring their accounts for identity theft and fraud, the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the data breach. These efforts are burdensome and time-consuming. Many Class members will also incur out-of-pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards in the event of fraudulent charges, and similar costs related to the data breach.

120.    The risk of identity theft and fraud will persist for years. Identity thieves often hold stolen data for months or years before using it to avoid detection. Also, the sale of stolen information on the dark web may take months or more to reach end-users, in part because the data is often sold in small batches as opposed to in bulk to a single buyer. Thus, Plaintiffs and Class members must vigilantly monitor their financial accounts indefinitely.

CLASS ACTION COMPLAINT, CASE NO. _____

121.   PPLA acknowledges that Plaintiffs and Class members face a significant risk of various types of identity theft stemming from the data breach. Attempting to shift the burden of responding to the data breach to patients, PPLA recommended to Plaintiffs and affected patients that "[i]t is always a good idea to review statements you receive from your health insurer and health care providers. If you see charges for services you did not receive, please call the insurer or provider immediately." Thus, PPLA acknowledges that Plaintiffs and Class members face an actual imminent risk of fraud and identity theft that requires not only immediate action but continuous, ongoing monitoring.

122.   Neither PPLA or PPFA has offered any credit or identity theft monitoring to affected patients. Thus, what Planned Parenthood is doing is wholly insufficient to combat the indefinite and undeniable risk of identity theft and fraud, amongst other risks, that may continue long after the data breach.

123.   Plaintiffs and Class members were also harmed because they were promised services that Planned Parenthood represented would include reasonable security measures to protect their highly sensitive and confidential e-PHI but that, in reality, did not. Plaintiffs and Class members would not have used Planned Parenthood's services or provided their highly sensitive and confidential e-PHI had they known that these representations were false.

124.   Indeed, certain Plaintiffs specifically chose to seek sensitive medical procedures at a Planned Parenthood facility because they did not feel comfortable obtaining them from their primary doctor due to concerns for their privacy and trusted that Planned Parenthood would maintain the privacy and confidentiality of their highly sensitive and confidential e-PHI.

125.   Lastly, Plaintiffs and Class members have been harmed by Planned Parenthood's intrusion upon their seclusion and invasion of their privacy rights, as described in Section X. Planned Parenthood configured their systems in such a way to make Plaintiffs' and Class members' highly sensitive and confidential e-PHI

exfiltrateable and available without their consent. As a result of Planned Parenthood's conduct, unauthorized persons did in fact access Plaintiffs' and Class members' highly sensitive and confidential e-PHI, in which Plaintiffs and Class members had a reasonable expectation of privacy.

## X.   PLANNED PARENTHOOD'S PATIENTS HAVE A REASONABLE EXPECTATION OF PRIVACY

126.   Plaintiffs and Class members have a reasonable expectation of privacy in their intimate health data, which Planned Parenthood collected, stored, and disclosed to unauthorized third parties.

127.   It is woefully ironic that Planned Parenthood, an organizational network of affiliates that prides itself on protecting and advocating for the right to privacy and reproductive rights enshrined in the U.S. and California Constitutions by affording patients reproductive healthcare access has allowed itself to be susceptible to the data breach that exposed the highly sensitive and confidential e-PHI of hundreds of thousands patients, including some of the most intimate details of their private lives.

128.   Plaintiffs and Class members have a reasonable expectation of privacy in their highly sensitive and confidential e-PHI, which Planned Parenthood collected, stored, and disclosed. This expectation of privacy is deeply enshrined in California's Constitution.

129.   Article I, Section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness*, and privacy*." Art. I., Sec. 1, Cal. Const (emphasis added).

130.   The phrase "and privacy" was added in 1972 after voters approved a legislative constitutional amendment designated as Proposition 11. Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb

businesses' control over the unauthorized collection and use of consumers' personal information, stating in relevant part:

> The right of privacy is the right to be left alone . . . It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us.
>
> **Fundamental to our privacy is the ability to control circulation of personal information.** This is essential to social relationships and personal freedom. The proliferation of government and business records over which we have no control limits our ability to control our personal lives. Often we do not know that these records even exist and we are certainly unable to determine who has access to them.[5]

(emphasis added).

131.   Consistent with this language, an abundance of studies examining the collection of consumers' personal data confirms that the surreptitious unauthorized disclosure of highly sensitive and confidential e-PHI from hundreds of thousands of individuals, as Planned Parenthood has done here, violates expectations of privacy that have been established as general social norms.

132.   Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.

133.   Surveys consistently show that individuals care about the security and privacy of their e-PHI. In 2013, the *Office of the National Coordinator for Health*

---

[5] Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 7, 1972) at 27.

*Information Technology* found that 7 out of 10 individuals are concerned about the privacy of their medical records. The same study found that 3 out of 4 individuals are concerned about the security of their medical records.

134.    Likewise, a *Gallup* survey found that 78% of adults believe that it is very important that their medical records be kept confidential, and a majority of respondents believe no one should be permitted to see their records without consent.

135.    A recent study by *Consumer Reports* shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before sharing their data and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.

136.    Consistent with these expectations, Plaintiffs and Class members have taken steps specifically to ensure the confidentiality of their medical information and treatment at Planned Parenthood, including not disclosing this information to others and even obscuring the specific treatment on insurance records.

137.    Despite Plaintiffs and Class members expectation of privacy, Planned Parenthood has failed to obtain adequate authorization and data security practices in connection with its data collection practices and the unauthorized disclosure that occurred. This constitutes a violation of Plaintiffs' and Class members' privacy interests, including those explicitly enshrined in the California Constitution.

## CLASS ACTION ALLEGATIONS

138.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Nationwide Class:

All persons in the United States whose e-PHI was compromised in the data breach that was made public by Planned Parenthood in November 2021. (the "**Nationwide Class**").

139.    Excluded from the Nationwide Class are Defendants and its subsidiaries and affiliates; all employees of Defendants and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the

Nationwide Class; Plaintiffs' counsel and Planned Parenthood's counsel and members of their immediate families; government entities; and the judge to whom this case is assigned, including his/her immediate family and court staff.

140.   Plaintiffs reserve the right to modify, expand or amend the above Class definitions or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## CALIFORNIA SUBCLASS

141.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following California Subclass:

> All persons in the state of California whose e-PHI were compromised in the data breach that was made public by Planned Parenthood in November 2021. (the **California Subclass**").

142.   Excluded from the California Subclass are Defendants and its subsidiaries and affiliates; all employees of Defendants and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the California Class; Plaintiffs' counsel and Planned Parenthood's counsel and members of their immediate families; government entities; and the judge to whom this case is assigned, including his/her immediate family and court staff.

143.   Plaintiffs reserve the right to modify, expand or amend the above Subclass definitions or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## PAID NATIONWIDE SUBCLASS

144.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Paid Subclass:

---

CLASS ACTION COMPLAINT, CASE NO. _____

All persons in the United States who paid money (including premiums) to Planned Parenthood whose e-PHI was compromised in the data breach that was made public by Planned Parenthood in November 2021. (the "**Paid Nationwide Subclass**").

145.    Excluded from the Paid Subclass are Defendants and its subsidiaries and affiliates; all employees of Defendants and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the California Class; Plaintiffs' counsel and Planned Parenthood's counsel and members of their immediate families; government entities; and the judge to whom this case is assigned, including his/her immediate family and court staff.

146.    Plaintiffs reserve the right to modify, expand or amend the above Subclass definitions or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

147.    Certification of Plaintiffs' claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

## PAID CALIFORNIA SUBCLASS

148.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Paid Subclass:

All persons in California who paid money (including premiums) to Planned Parenthood whose e-PHI was compromised in the data breach that was made public by Planned Parenthood in November 2021. (the "**Paid California Subclass**").

149.    Excluded from the Paid Subclass are Defendants and its subsidiaries and affiliates; all employees of Defendants and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the California Class; Plaintiffs' counsel and Planned Parenthood's counsel and members of their

---

immediate families; government entities; and the judge to whom this case is
assigned, including his/her immediate family and court staff.

150.   Plaintiffs reserve the right to modify, expand or amend the above
Subclass definitions or to seek certification of a class or classes defined
differently than above before any court determines whether certification is
appropriate following discovery.

151.   Certification of Plaintiffs' claims for class-wide treatment are
appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are
satisfied. Plaintiffs can prove the elements of their claims on a class-wide basis
using the same evidence as would be used to prove those elements in individual
actions alleging the same claims.

152.   **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(1) are
satisfied. The members of the Classes are so numerous and geographically
dispersed that individual joinder of all Class members is impracticable. While
Plaintiffs are informed and believe that there are likely at least 400,000 members
of the Classes according to news reports, the precise number of Class members is
unknown to Plaintiffs. Class members may be identified through objective means
including Planned Parenthood's own patient records. Class members may be
notified of the pendency of this action by recognized, court-approved notice
dissemination methods, which may include U.S. mail, electronic mail, internet
postings, and/or published notice.

153.   **Commonality and Predominance:** All requirements of Fed. R. Civ.
P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of
law and fact, which predominate over any questions affecting individual Class
members, including, without limitation:

a.      Whether Defendants owed a duty to Plaintiffs and Class members to
secure and safeguard their e-PHI;

b.    Whether Defendants failed to use reasonable care and reasonable methods to secure and safeguard Plaintiffs' and Class members' e-PHI;

c.    Whether Defendants properly implemented security measures as required by HIPAA or any other laws or industry standards to protect Plaintiffs' and Class members' e-PHI from unauthorized access, capture, dissemination and misuse;

d.    Whether Plaintiffs and members of the Class were injured and suffered damages and ascertainable losses as a result of Defendants' actions or failure to act;

e.    Whether Defendants engaged in active misfeasance and misconduct alleged herein;

f.    Whether Defendants knew or should have known that its data security systems and monitoring processes were deficient;

g.    Whether Defendants' failure to provide adequate security proximately caused Plaintiffs' and Class members' injuries; and

h.    Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

154.    **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiffs are members of the Classes. Plaintiffs' claims are typical of the claims of all Class members because Plaintiffs, like other Class members, suffered theft of their e-PHI in the data breach.

155.    **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiffs are adequate Class representatives because they are members of the Classes and their interests do not conflict with the interests of other Class members that they seek to represent. Plaintiffs are committed to pursuing this matter for the Classes with the Class's collective best interest in mind. Plaintiffs have retained counsel competent and experienced in complex class action litigation

of this type and Plaintiffs intend to prosecute this action vigorously. Plaintiffs, and their counsel, will fairly and adequately protect the Class's interests.

156.    **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiffs' case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Planned Parenthood, so it would be impracticable for members of the Class to individually seek redress for Planned Parenthood's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

157.    **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Planned Parenthood has acted, or refused to act, on grounds generally applicable to the Class such that final declaratory or injunctive relief appropriate.

158.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## **CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS**

159.  California's substantive laws apply to every member of the Class, regardless of where in the United States the Class member resides.

160.  California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit Clause, Art. IV § 1 of the U.S. Constitution. California has significant contacts, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

161.  PPLA is incorporated in California, its principal place of business is located in California. PPLA also owns property and conducts substantial business in California, and therefore California has an interest in regulating Planned Parenthood's conduct under its laws. PPLA's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

162.  California is also the state from which Planned Parenthood's alleged misconduct emanated. This conduct similarly injured and affected Plaintiffs and all other Class members.

163.  The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class and Subclasses, and California has a greater interest in applying its laws here than any other interested state.

## **CLAIMS FOR RELIEF**
### **COUNT I**
### **NEGLIGENCE**
### **(On Behalf of the Nationwide Class)**

164.   Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

165.   Planned Parenthood is a provider of reproductive healthcare services whose patients, including Plaintiffs and Class members, entrust them with highly sensitive and confidential e-PHI in connection with these services.

166.   Given the highly sensitive nature of e-PHI and likelihood of harm resulting from its unauthorized access, acquisition, use, or disclosure, multiple statutes, regulations, and guidelines, in addition to the common law, impose a duty on Planned Parenthood to protect this information.

167.   For example, the HIPAA Security Rule requires Planned Parenthood to: (a) ensure the confidentiality, integrity, and availability of all e-PHI they create, receive, maintain or transmit; (b) proactively identify and protect against reasonably anticipated threats to the security or integrity of the information; (c) protect against reasonably anticipated, impermissible uses or disclosures; (d) put in place the required administrative, physical and technical safeguards; (e) implement policies and procedures to prevent, detect, contain, and correct security violations; (f) effectively train their workforce regarding the proper handling of e-PHI; and (g) designate individual security and privacy officers to ensure compliance.

168.   Planned Parenthood also had a duty to use reasonable data security measures under several state and federal laws, including § 5 of the FTC Act, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect consumer data.

169.   Planned Parenthood owed a duty of care to Plaintiffs and Class members to provide data security consistent with the various statutory requirements, regulations, and other notices described above.

170.   Accordingly, Planned Parenthood owed a duty to Plaintiffs and Class members to exercise reasonable care in safeguarding and protecting their highly sensitive and confidential e-PHI by, among other things: (a) maintaining adequate security systems to ensure that Plaintiffs' and Class members' highly sensitive and confidential e-PHI was adequately secured and protected; (b) implementing processes that would detect a breach of Planned Parenthood's systems in a timely manner; and (c) timely notifying patients, including Plaintiffs and Class members, that their highly sensitive and confidential e-PHI had been accessed, acquired, used, or disclosed as a result of a data breach so that Plaintiffs and Class members could protect themselves from identify theft by transferring their records to a different provider who maintained adequate security controls, obtaining credit and/or identify theft monitoring protection, canceling or changing their bank account and/or debit or credit card information, and/or taking other appropriate precautions.

171.   Planned Parenthood's duty of care arose as a result of, among other things, the special relationship that existed between Planned Parenthood and its patients. Planned Parenthood was the only party in a position to ensure that its systems were sufficient to protect against the foreseeable risk that a data breach could occur, which would result in substantial harm to consumers.

172.   Planned Parenthood was subject to an "independent duty" untethered to any contract between Plaintiffs and Class members and Planned Parenthood.

173.   Planned Parenthood breached their duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' highly sensitive and confidential e-PHI by failing to adopt, implement, and maintain adequate security measures.

174.    For example, Planned Parenthood failed to implement appropriate systems to detect a breach of their systems. Planned Parenthood negligently failed to abide by the HIPAA Security Rule, among other guidelines and regulations, by failing to protect against anticipated threats to the security or integrity of Plaintiffs' and Class members' highly sensitive and confidential e-PHI, and any reasonably anticipated impermissible uses or disclosures of their highly sensitive and confidential e-PHI.

175.    Planned Parenthood also breached their duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' highly sensitive and confidential e-PHI by failing to timely notify Plaintiffs and Class members that their highly sensitive and confidential e-PHI had been accessed by unauthorized third parties.

176.    Planned Parenthood's failure to comply with industry regulations such as HIPAA further evidence their negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' highly sensitive and confidential e-PHI.

177.    It was foreseeable to Planned Parenthood that a failure to use reasonable measures to protect its patients' highly sensitive and confidential e-PHI could result in injury to its patients.

178.    Actual and attempted breaches of data security were reasonably foreseeable to Planned Parenthood given that other PPFA affiliates had recently been breached before as well as the known frequency of data breaches and various warnings from industry experts.

179.    The injuries and harm suffered by Plaintiffs and Class members as a result of having their highly sensitive and confidential e-PHI accessed, viewed, acquired, used, or disclosed without authorization was the reasonably foreseeable result of Planned Parenthood's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' highly sensitive and confidential e-

PHI. Planned Parenthood knew or should have known that the systems and technologies used for storing Plaintiffs' and Class members' highly sensitive and confidential e-PHI allowed that information to be accessed, acquired, used, or disclosed by unauthorized third parties. But for Planned Parenthood's wrongful and negligent breach of duties owed to Plaintiffs and Class members, the injuries alleged herein would not have occurred.

180.   In connection with the conduct described above, Planned Parenthood acted wantonly, recklessly, and with complete disregard for the consequences Plaintiffs and Class members would suffer if their highly sensitive and confidential e-PHI was accessed by unauthorized third parties.

181.   In addition to Planned Parenthood's common law duty to exercise reasonable care in securing Plaintiffs' and Class members' data, several statutes independently imposed a duty on Planned Parenthood to safeguard highly sensitive e-PHI. Planned Parenthood's violation of these statutory duties, as described below, each independently provides an evidentiary presumption to support Plaintiffs' and Class members' negligence claim as negligence *per se*.

<u>HIPAA</u>

182.   As alleged above, the HIPAA Security Rule requires Planned Parenthood to maintain reasonable and appropriate administrative, technical, and physical safeguards for protecting highly sensitive and confidential e-PHI, which Planned Parenthood negligently failed to implement.

183.   The HIPAA Security Rule also requires Planned Parenthood to protect against reasonably anticipated threats to the security or integrity of e-PHI and protect against reasonably anticipated impermissible uses or disclosures, which Planned Parenthood negligently failed to do. *See* 45 C.F.R. Part 160 and Part 164, Subpart A and C.

184.    Planned Parenthood's failure to secure Plaintiffs' and Class members' e-PHI and to notify them that such information had been accessed by unauthorized third parties violated at least the following HIPAA regulations:

    a.    The HIPAA Privacy and Security Rule 45 C.F.R. § 160 and 45 C.F.R. § 164, Subpart A, C, and E

        i.    45 C.F.R. § 164.306

        ii.    45 C.F.R. § 164.308

        iii.    45 C.F.R. § 164.312

        iv.    45 C.F.R. § 164.314

        v.    45 C.F.R. § 164.502

        vi.    45 C.F.R. § 164.530

185.    The harm that has occurred is the type of harm that HIPAA was intended to guard against, namely, the disclosure of patients' sensitive patient information, including e-PHI.

186.    Plaintiffs and Class members are within the class of persons that the HIPAA Privacy and Security Rule were intended to protect, because the HIPAA Privacy and Security rule were expressly designed to protect sensitive patient information.

187.    Planned Parenthood had a duty to Plaintiffs and Class members to implement and maintain reasonable security procedures and practices under HIPAA to safeguard Plaintiffs' and Class members' highly sensitive and confidential e-PHI.

188.    Planned Parenthood breached their duties to Plaintiffs and Class members under the HIPAA, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' highly sensitive and confidential e-PHI.

189.    Planned Parenthood's violations of HIPAA and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

1

FTC Act, 15 U.S.C. § 45

2      190.    As alleged above, pursuant to the FTC Act, 15 U.S.C. § 45, Planned

3  Parenthood had a duty to provide fair and adequate computer systems and data

4  security practices to safeguard Plaintiffs' and Class members' highly sensitive and

5  confidential e-PHI.

6      191.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting

7  commerce," including, as interpreted and enforced by the FTC, the failure to use

8  reasonable measures to protect highly sensitive and confidential e-PHI. The FTC

9  publications and orders described above also form part of the basis of Planned

10  Parenthood's duty.

11      192.    Planned Parenthood violated Section 5 of the FTC Act by failing to

12  use reasonable measures to protect highly sensitive and confidential e-PHI and

13  comply with applicable industry standards, including the FTC Act, as described in

14  detail herein. Planned Parenthood's conduct was particularly unreasonable given

15  the nature and amount of e-PHI it collected and stored and the foreseeable

16  consequences of a data breach, including specifically, as described herein, the

17  damages that would result to consumers.

18      193.    Plaintiffs and Class members are consumers within the class of

19  persons Section 5 of the FTC Act was intended to protect because they paid

20  Planned Parenthood for reproductive healthcare and/or medical goods and services.

21      194.    The harm that has occurred is the type of harm the FTC Act was

22  intended to guard against, namely harm to consumers as a result of unfair practices

23  in commerce.

24      195.    Indeed, the FTC has pursued numerous enforcement actions against

25  businesses that, as a result of their failure to employ reasonable data security

26  measures and avoid unfair and deceptive practices, caused the same harm as that

27  suffered by Plaintiffs and Class members.

28

CLASS ACTION COMPLAINT, CASE NO. _____

196.    Planned Parenthood had a duty to Plaintiffs and Class members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class members' highly sensitive and confidential e-PHI.

197.    Planned Parenthood breached their duties to Plaintiffs and Class members under the FTC Act, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' highly sensitive and confidential e-PHI.

198.    Planned Parenthood's violations of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

<u>California's Confidentiality of Medical Information Act</u>

<u>Cal. Civ. Code § 56, *et seq.*</u>

199.    Under the CMIA, "[a]n electronic health record system or electronic medical record system shall do the following: (A) Protect and preserve the integrity of electronic medical information; [and] (B) Automatically record and preserve any change or deletion of any electronically stored medical information. The record of any change or deletion shall include the identity of the person who accessed and changed the medical information, the date and time the medical information was accessed, and the change that was made to the medical information." Cal. Civ. Code § 56.101(b)(1)(A) – (B).

200.    Planned Parenthood violated the CMIA by negligently maintaining, preserving, and storing Plaintiffs' and Class members' medical information inasmuch as it did not implement adequate security protocols to prevent unauthorized access to medical information, maintain an adequate electronic security system to prevent data breaches, or employ industry standard and commercially viable measures to mitigate the risks of any data the risks of any data breach or otherwise comply with HIPAA data security requirements.

201.    Planned Parenthood failed to protect and preserve the integrity of electronic medical information and automatically record and preserve any change or deletion of any electronically stored medical information.

202.    Plaintiffs and Class members are within the class of persons the CMIA is intended to protect against, namely, patients of health care providers.

203.    The harm that has occurred is the type of harm the CMIA was intended to guard against, namely protecting and preserving the integrity of electronic medical information.

204.    As a direct and proximate result of Planned Parenthood's negligence, Plaintiffs' and Class members' medical information was accessed and exfiltrated by an unauthorized third party and they were injured as a result.

205.    The injury and harm suffered by Plaintiffs and Class members was a reasonably foreseeable result of Planned Parenthood's breach of its duties. Planned Parenthood knew or should have known that the breach of its duties would cause Plaintiffs and Class members to suffer the foreseeable harms associated with the exposure of their medical information.

206.    Planned Parenthood's violations of the CMIA constitutes negligence *per se*.

207.    As a direct and proximate result of Planned Parenthood's negligence, including violations of HIPAA, the FTC Act, and the CMIA constituting negligence *per se*, Plaintiffs and Class members sustained damages, including violation of their privacy interest and emotional distress, as alleged herein. Plaintiffs and Class members are entitled to compensatory and consequential damages suffered as a result of the data breach.

208.    As a result of Defendants' negligence, Plaintiffs and Class members are also entitled to injunctive relief requiring Planned Parenthood to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii)

1   submit to future annual audits of those systems; and (iii) provide free credit
2   monitoring and identity theft insurance to Plaintiffs and all Class members.

### COUNT II
### BREACH OF CONTRACT
### (On behalf of the Nationwide Class)

5   209.   Plaintiffs re-allege and incorporate by reference all preceding
6   allegations as if fully set forth herein.

7   210.   Planned Parenthood expressly promised to safeguard Plaintiffs' and
8   Class members' highly sensitive and confidential e-PHI in accordance with the
9   applicable state and federal laws and/or regulations. Additionally, Planned
10  Parenthood promised to abide by their own Privacy Policy, which they provided to
11  patients.

12  211.   This Privacy Policy applied to Plaintiffs and Class members who
13  accepted Planned Parenthood's promise and entered into a contract with Planned
14  Parenthood when they entrusted their highly sensitive and confidential e-PHI to
15  Planned Parenthood as part of a transaction for medical goods and services.

16  212.   Plaintiffs and Class members fully performed their obligations under
17  their contracts with Defendant, including by providing their highly sensitive and
18  confidential e-PHI and receiving treatment at Planned Parenthood.

19  213.   Planned Parenthood did not hold up their end of the bargain. In
20  entering into such contracts, Planned Parenthood agreed to protect Plaintiffs' and
21  Class members' highly sensitive and confidential e-PHI, secure the servers and
22  systems that housed Plaintiffs' and Class members' highly sensitive and
23  confidential e-PHI, and to provide timely notice if their highly sensitive and
24  confidential e-PHI was accessed, acquired, used, of disclosed.

25  214.   Planned Parenthood failed on all accounts: they failed to take
26  reasonable steps to protect Plaintiffs' and Class members' highly sensitive and
27  confidential e-PHI, secure their servers and systems that stored Plaintiffs' and
28  Class members' highly sensitive and confidential e-PHI. Each of these acts

---

CLASS ACTION COMPLAINT, CASE NO. _____

constituted a separate breach of the contracts Planned Parenthood entered with Plaintiffs and Class members.

215.   Plaintiffs and Class members would not have entrusted Planned Parenthood with their highly sensitive and confidential e-PHI in the absence of the contract between them and Defendant, obligating Planned Parenthood to keep this information secure and provide timely notice in the event of a breach.[6]

216.   As a direct and proximate result of Planned Parenthood's breaches of their contracts, Plaintiffs and Class members sustained damages as alleged herein, including when they received services that did not include reasonable security measures sufficient to protect Plaintiffs' and Class members' highly sensitive and confidential e-PHI, despite Planned Parenthood's promise that it would do so. Plaintiffs and Class members would not have paid for and used, or would have paid less, for Planned Parenthood's services had they known these representations were false.

217.   Plaintiffs and Class members are entitled to compensatory and consequential damages as a result of Planned Parenthood's breach of contract.

## COUNT III
## BREACH OF IMPLIED CONTRACT
### (On behalf of the Nationwide Class)

218.   Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

219.   When Plaintiffs and Class members provided their highly sensitive and confidential e-PHI to Planned Parenthood in exchange for Planned Parenthood's services, they entered into implied contracts with Planned

---

[6] This is consistent with most consumer attitudes. A recent study by CynergisTek, a leading cybersecurity firm, found that 70 percent of individuals would be likely to cut ties with a healthcare provider who was not properly securing their personal health data.

Parenthood under which Defendants agreed to take reasonable steps to protect their highly sensitive and confidential e-PHI.

220.   Planned Parenthood solicited and invited Plaintiffs and Class members to provide their highly sensitive and confidential e-PHI as part of Planned Parenthood's regular business practices. Plaintiffs and Class members accepted Planned Parenthood's offers and provided their highly sensitive and confidential e-PHI to Defendant.

221.   When entering into the implied contracts, Plaintiffs and Class members reasonably believed and expected that Planned Parenthood's data security practices complied with relevant laws, regulations, and industry standards.

222.   When entering into the implied contracts, Plaintiffs and Class members reasonably believed that Planned Parenthood would safeguard and protect their highly sensitive and confidential e-PHI and that Planned Parenthood would use part of the funds received from Plaintiffs and Class members to pay for adequate and reasonable data security practices. Planned Parenthood failed to do so.

223.   Plaintiffs and Class members would not have provided their highly sensitive and confidential e-PHI to Planned Parenthood in the absence of Planned Parenthood's implied promise to keep their highly sensitive and confidential e-PHI reasonably secure.

224.   Plaintiffs and Class members fully performed their obligations under the implied contracts by paying money to Planned Parenthood.

225.   Planned Parenthood breached its implied contracts with Plaintiffs and Class members by failing to safeguard and protect their highly sensitive and confidential e-PHI.

226.   As a direct and proximate result of Planned Parenthood's breaches of implied contracts, Plaintiffs and Class members sustained damages as alleged herein, including when they received services that did not include reasonable

---

CLASS ACTION COMPLAINT, CASE NO. _____

security measures sufficient to protect Plaintiffs' and Class members' highly
sensitive and confidential e-PHI, despite Planned Parenthood's promise that it
would do so. Plaintiffs and Class members would not have paid for and used, or
would have paid less, for Planned Parenthood's services had they known these
representations were false.

227.   Plaintiffs and Class members are also entitled to injunctive relief
requiring Planned Parenthood to, among other things: (i) strengthen its data
security systems and monitoring procedures; (ii) submit to future annual audits of
those systems; and (iii) provide free credit monitoring and identity theft insurance
to all Class members.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of the Nationwide Class)**

228.   Plaintiffs re-allege and incorporate by reference all preceding
allegations as if fully set forth herein.

229.   Plaintiffs and Class members conferred a monetary benefit upon
Planned Parenthood when they paid money for services at Planned Parenthood.

230.   Planned Parenthood appreciated or had knowledge of the benefits
conferred upon it by Plaintiffs and Class members. Planned Parenthood also
benefited from the receipt of Plaintiffs' and Class members' highly sensitive and
confidential e-PHI.

231.   The funds Plaintiffs and Class members paid to Planned Parenthood
were supposed to be used by Planned Parenthood, in part, to pay for adequate data
privacy infrastructure, practices, and procedures.

232.   As a result of Planned Parenthood's conduct, Plaintiffs and Class
members suffered actual damages in an amount equal to the difference in value
between what they paid for, Planned Parenthood's medical goods/services made
with adequate data privacy and security practices and procedures, and what they

received, Planned Parenthood's medical goods/services without adequate data privacy and security practices and procedures.

233.   Under principals of equity and good conscience, Planned Parenthood should not be permitted to retain the money belonging to Plaintiffs and Class members because Planned Parenthood failed to implement, or adequately implement, the data privacy and security practices and procedures that Plaintiffs and Class members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

234.   Planned Parenthood should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class members all unlawful or inequitable proceeds received by it as a result of the conduct and data breach alleged herein.

**COUNT V**
**COMMON LAW INVASION OF PRIVACY – INTRUSION UPON SECLUSION**
**(On behalf of the Nationwide Class)**

235.   Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

236.   Plaintiffs asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

237.   There is no area where there is more of a reasonable expectation of privacy than in the area of reproductive healthcare, which are the types of services Planned Parenthood provides.

238.   Planned Parenthood intentionally intruded upon the solitude, seclusion and private affairs of Plaintiffs and Class members by intentionally configuring their systems in such a way that left them vulnerable to malware/ransomware attack, thus permitting unauthorized access to their systems, which compromised

Plaintiffs' and Class members' highly sensitive and confidential e-PHI. Only Planned Parenthood had control over its systems.

239.    Planned Parenthood's conduct is especially egregious and offensive as they failed to have any adequate security measures in place to prevent, track, or detect in a timely fashion unauthorized access to Plaintiffs' and Class members' e-PHI.

240.    At all times, Planned Parenthood was aware that Plaintiffs' and Class members' highly sensitive and confidential e-PHI in their possession contained highly sensitive medical information, including patient name, and one or more of the following: dates of birth, addresses, insurance identification numbers, and clinical data (such as diagnosis, treatment, or prescription information).

241.    Plaintiffs and Class members have a reasonable expectation in their e-PHI, which contains highly sensitive medical information.

242.    Planned Parenthood intentionally configured their systems in such a way that stored Plaintiffs' and Class Members' highly sensitive and confidential e-PHI to be left vulnerable to malware/ransomware attack without regard for Plaintiffs' and Class members' privacy interests.

243.    The disclosure of the highly sensitive and confidential e-PHI of 400,000 patients, was highly offensive to Plaintiffs and Class members because it violated expectations of privacy that have been established by general social norms, including by granting access to information and data that is private and would not otherwise be disclosed.

244.    Surveys consistently show that individuals care about the security and privacy of their highly sensitive and confidential e-PHI. In 2013, the *Office of the National Coordinator for Health Information Technology* found that 7 out of 10 individuals are concerned about the privacy of their medical records. The same study found that 3 out of 4 individuals are concerned about the security of their medical records. Likewise, a *Gallup* survey found that 78% of adults believe that it

---

is very important that their medical records be kept confidential, and a majority of respondents believe no one should be permitted to see their records without consent. Plaintiffs and Class members acted consistent with these polls and surveys by safeguarding their medical information, including the ePHI exfiltrated and stolen in the data breach.

245.   Planned Parenthood's conduct would be highly offensive to a reasonable person in that it violated statutory and regulatory protections designed to protect highly sensitive medical information, in addition to social norms. Planned Parenthood's conduct would be especially egregious to a reasonable person as Planned Parenthood publicly disclosed Plaintiffs' and Class members' highly sensitive and confidential e-PHI without their consent, including to an "unauthorized person," i.e., hackers.

246.   As a result of Planned Parenthood's actions, Plaintiffs and Class members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

247.   Plaintiffs and Class members have been damaged as a direct and proximate result of Planned Parenthood's intrusion upon seclusion and are entitled to just compensation.

248.   Plaintiffs and Class members are entitled to appropriate relief, including compensatory damages for the harm to their privacy, loss of valuable rights and protections, and heightened risk of future invasions of privacy.

**COUNT VI**
**INVASION OF PRIVACY**
**ART. I, SEC 1 OF THE CALIFORNIA CONSTITUTION**
**(On behalf of the California Subclass)**

249.   Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

250.   Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying

and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Art. I, § 1, Cal. Const.

251.   The right to privacy in California's constitution creates a private right of action against private and government entities.

252.   To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

253.   Planned Parenthood violated Plaintiffs' and California Subclass members' constitutional right to privacy by collecting, storing, and disclosing (1) e-PHI in which they had a legally protected privacy interest, (2) Plaintiffs' and California Subclass members' e-PHI in which they had a reasonable expectation of privacy in, (3) in a manner that was highly offensive to Plaintiffs and California Subclass members, would be highly offensive to a reasonable person, and was in egregious violation of social norms.

254.   Planned Parenthood have intruded upon Plaintiffs' and California Subclass members' legally protected privacy interests, including, *inter alia*: (i) interests in precluding the dissemination or misuse of sensitive and confidential personal—the e-PHI; and (ii) interests in making intimate personal healthcare decisions or conducting personal activities without observation, intrusion, or interference.

255.   The highly sensitive and confidential e-PHI, which Planned Parenthood stored, monitored, collected, and disclosed without Plaintiffs' and California Subclass members' authorization and/or consent included, *inter alia*, patient names, dates of birth, addresses, insurance identification numbers, and clinical data (such as diagnosis, treatment, or prescription information).

256.    Plaintiffs and California Subclass members had a legally protected informational privacy interest in the confidential and sensitive e-PHI involved as well as a privacy interest in conducting their personal healthcare decisions and activities without intrusion, interference, or disclosure.

257.    Planned Parenthood's actions constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that: (i) the invasion occurred within a zone of privacy protected by the California Constitution, namely the misuse of information gathered for an improper purpose; and (ii) the invasion deprived Plaintiffs and California Subclass members of the ability to control the circulation of their highly sensitive and confidential e-PHI, which is considered fundamental to the right to privacy.

258.    Plaintiffs and California Subclass members had a reasonable expectation of privacy in that: (i) Planned Parenthood's invasion of privacy occurred as a result of Planned Parenthood's security practices including the collecting, storage, and unauthorized disclosure of highly sensitive and confidential e-PHI; (ii) Plaintiffs and California Subclass members did not consent or otherwise authorize Planned Parenthood to disclosure their highly sensitive and confidential e-PHI; and (iii) Plaintiffs and California Subclass members could not reasonably expect Planned Parenthood would commit acts in violation of laws protecting privacy.

259.    As a result of Planned Parenthood's actions, Plaintiffs and California Subclass members have been damaged as a direct and proximate result of Planned Parenthood's invasion of their privacy and are entitled to just compensation.

260.    Plaintiffs and California Subclass members suffered actual and concrete injury as a result of Planned Parenthood's violations of their privacy interests. Plaintiffs and California Subclass members are entitled to appropriate relief, including damages to compensate them for the harm to their privacy interests, loss of valuable rights and protections, heightened risk of future invasions

of privacy, and the mental and emotional distress and harm to human dignity interests caused by Defendants' invasions.

261.    Plaintiffs and the California Subclass seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and California Subclass members for the harm to their privacy interests as well as disgorgement of profits made by Planned Parenthood as a result of its intrusions upon Plaintiffs' and California Subclass members' privacy.

### COUNT VII
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On Behalf of the California Subclass)

262.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

263.    Planned Parenthood is a "person" as defined by Cal. Bus. & Prof. Code §17201.

264.    Planned Parenthood violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

265.    Planned Parenthood's business acts and practices are "unlawful" under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et. seq.* ("UCL"), because, as alleged above, Planned Parenthood violated the California common law, California Constitution, and the other state and federal statutes and causes of action described herein.

266.    Planned Parenthood's business acts and practices are "unfair" under the UCL, because, as alleged above, California has a strong public policy of protecting consumers' privacy interests, including protecting consumers' personal data, including highly sensitive and confidential e-PHI. Planned Parenthood violated this public policy by, among other things, surreptitiously collecting,

---

storing, disclosing, and otherwise misusing Plaintiffs' and California Subclass members' highly sensitive and confidential e-PHI without Plaintiffs' and California Subclass members' consent. Planned Parenthood further engaged in unfair business practices because it made material misrepresentations and omissions concerning the information that Planned Parenthood assured patients it would protect their highly sensitive and confidential e-PHI, which deceived and misled patients. Planned Parenthood's conduct violates the policies of the statutes referenced herein.

267.  Planned Parenthood's business acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers. The gravity of the harm of Planned Parenthood's collecting, storing, disclosing, and otherwise misusing Plaintiffs' and California Subclass members' highly sensitive and confidential e-PHI is significant, and there is no corresponding benefit resulting from such conduct. Finally, because Plaintiffs and California Subclass members were completely unaware of Planned Parenthood's conduct, they could not have possibly avoided the harm.

268.  Planned Parenthood's business acts and practices are also "fraudulent" within the meaning of the UCL. Planned Parenthood misrepresented that it maintained sufficient data security measures and systems to protect Plaintiffs' and California Subclass members' e-PHI. Planned Parenthood never disclosed that these practices were severely deficient.

269.  Planned Parenthood's unlawful, unfair, and deceptive acts and practices include:

(a)    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and California Subclass members' e-PHI, which was a direct and proximate cause of the data breach and omitting, suppressing, and concealing the material fact of that failure;

(b)     Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following well-publicized cybersecurity incidents, which was a direct and proximate cause of the data breach and omitting, suppressing, and concealing the material fact of that failure;

(c)     Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' e-PHI, including duties imposed by the FTC Act, HIPAA, and CMIA which was a direct and proximate cause of the data breach and omitting, suppressing, and concealing the material fact of that failure;

(d)     Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and California Subclass members' e-PHI, including by implementing and maintaining reasonable security measures;

(e)     Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' e-PHI, including duties imposed by the FTC Act, HIPAA, and CMIA;

(f)     Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and California Subclass members' e-PHI; and

(g)     Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' e-PHI, including duties imposed by the FTC Act, HIPAA, and the CMIA.

270.    Planned Parenthood's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Planned Parenthood's data security and ability to protect the confidentiality of consumers' highly sensitive and confidential e-PHI.

271.    As a direct and proximate result of Planned Parenthood's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and California Subclass members were injured and lost money or property, i.e., the prices received by Planned Parenthood for its goods and medical services; the loss of the benefit of their bargain with Planned Parenthood as they would not have paid Planned Parenthood for goods and services or would have paid less for such goods and services but for Planned Parenthood's violations alleged herein; costs to be spent for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their highly sensitive and confidential e-PHI; and an increased, imminent risk of fraud and identity theft.

272.    Planned Parenthood's violations were, and are, willful, deceptive, unfair, and unconscionable.

273.    Plaintiffs and California Subclass members would not have paid for Planned Parenthood's services, or would have paid significantly less, had they known that its representations and omissions concerning data security were false.

274.    Plaintiffs and California Subclass members have lost money and property as a result of Planned Parenthood's conduct in violation of the UCL, as stated in herein and above. Health data, such as the e-PHI collected by Planned Parenthood, objectively has value. For instance, Pfizer annually pays approximately $12 million to purchase health data from various sources.

275.    Consumers and patients, including Plaintiffs and California Subclass members also value their health data. According to the annual Financial Trust Index Survey, conducted by *the University of Chicago's Booth School of Business*

---

CLASS ACTION COMPLAINT, CASE NO. _____

*and Northwestern University's Kellogg School of Management*, which interviewed more than 1,000 Americans, 93% would not share their health data with a digital platform for free. Half of the survey respondents would only share their data for $100,000 or more, and 22% would only share their data if they received between $1,000 and $100,000.

276.   By deceptively storing, collecting, and disclosing this highly sensitive and confidential e-PHI, Planned Parenthood has taken money or property from Plaintiffs and California Subclass members.

277.   Plaintiffs and California Subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages; restitution; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

<u>COUNT VIII</u>
**VIOLATION OF THE CALIFORNIA
CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code § 1750,** *et seq.*
**(On behalf of the Paid Nationwide Subclass and Paid California Subclass)**

278.   Plaintiffs Pawlukiewicz and Dilanchyan re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

279.   The Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") is a comprehensive statutory scheme to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

280.   Planned Parenthood is a "person" as defined by Civil Code §§ 1761(c) and 1770 and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

281.   Civil Code section 1770, subdivision (a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have

sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

282.   Civil Code section 1770, subdivision (a)(7) prohibits one who is involved in a transaction from "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another."

283.   Plaintiffs Pawlukiewicz and Dilanchyan and members of the Paid Subclass are "consumers" as defined by Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

284.   Planned Parenthood's acts and practices were intended to and did result in the sale of products and services to Plaintiffs and Paid Subclass members in violation of Civil Code § 1770, including, but not limited to, the following:

(a)    Representing that goods or services have characteristics that they do not have;

(b)    Representing that goods or services are of a particular standard, quality, or grade when they were not;

(c)    Advertising goods or services with intent not to sell them as advertised;

(d)    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; and

(e)    Representing the transaction confers or involves rights, remedies, or obligations that it does not have or that are prohibited by law.

285.   Planned Parenthood's representations and omissions were material because they were likely to and did deceive reasonable consumers about the adequacy of Planned Parenthood's data security and ability to protect the confidentiality of patients' highly sensitive and confidential e-PHI.

286.   Had Planned Parenthood disclosed to Plaintiffs Pawlukiewicz and Dilanchyan and Paid Nationwide Subclass members and Paid California Subclass members that its data systems were not secure and, thus, vulnerable to attack,

Planned Parenthood would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Planned Parenthood received, maintained, and compiled Plaintiffs' and Paid Subclass members' highly sensitive and confidential e-PHI as part of the services Planned Parenthood provided and for which Plaintiffs Pawlukiewicz and Dilanchyan and Paid Subclass members paid without advising them that Planned Parenthood's data security practices were insufficient to maintain the safety and confidentiality of their highly sensitive and confidential e-PHI. Accordingly, Plaintiffs Pawlukiewicz and Dilanchyan and Paid Subclass members acted reasonably in relying on Planned Parenthood's misrepresentations and omissions, the truth of which they could not have discovered.

287.   As a direct and proximate result of Planned Parenthood's violations of California Civil Code § 1770, Plaintiffs Pawlukiewicz and Dilanchyan and Paid Nationwide Subclass members and Paid California Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with Planned Parenthood as they would not have paid Planned Parenthood for goods and services or would have paid less for such goods and services but for Planned Parenthood's violations alleged herein; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their highly sensitive and confidential e-PHI; and an increased, imminent risk of fraud and identity theft.

288.   Plaintiffs Pawlukiewicz and Dilanchyan, individually and on behalf of the Paid Nationwide Subclass members and Paid California Subclass members, seeks an injunction requiring Planned Parenthood to adopt reasonable and sufficient data security measures designed to protect and secure their highly sensitive and confidential e-PHI.

---

CLASS ACTION COMPLAINT, CASE NO. _____

63

289.   Pursuant to Cal. Civ. Code § 1782(a), on December 10, 2021, Plaintiffs Pawlukiewicz and Dilanchyan served Defendants with notice of their alleged violations of the CLRA by certified mail return receipt requested. If, within thirty (30) days after the date of such notification, Defendants fail to provide appropriate relief for its violations of the CLRA, Plaintiffs Plaintiffs Pawlukiewicz and Dilanchyan will amend this Complaint to seek monetary damages.

290.   In accordance with Cal. Civ. Code § 1780(d), Plaintiffs' Pawlukiewicz and Dilanchyan CLRA venue declaration is attached hereto as Exhibit B.

## COUNT IX
**VIOLATION OF THE CALIFORNIA CONFIDENTIALITY OF
MEDICAL INFORMATION ACT,
Cal. Civ. Code § 56, *et seq.*
(On Behalf of the California Subclass)**

291.   Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

292.   Under the CMIA, "medical information" is defined as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment. "Individually identifiable" means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." Cal. Civ. Code § 56.05(j). Plaintiffs' and California Subclass members' highly sensitive and confidential e-PHI constitutes "medical information" under the CMIA because it contained

---

CLASS ACTION COMPLAINT, CASE NO. _____

individually identifiable information in the possession or derived from Planned Parenthood.

293.    Under the CMIA, "provider of health care" means "any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code; any person licensed pursuant to the Osteopathic Initiative Act or the Chiropractic Initiative Act; any person certified pursuant to Division 2.5 (commencing with Section 1797) of the Health and Safety Code; any clinic, health dispensary, or health facility licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code." Cal. Civ. Code § 56.05(m).

294.    Planned Parenthood as a "provider of health care" is subject to the CMIA, because it is a "business organized for the purpose of maintaining medical information, as defined in subdivision (j) of Section 56.05, in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis and treatment of the individual, shall be deemed to be a provider of health care subject to the requirements of this part." Cal. Civ. Code § 56.06(a). As such, Planned Parenthood is subject to the penalties for improper use and disclosure of medical information prescribed in this part." Cal. Civ. Code § 56.06(e).

295.    Under the CMIA, "patient" means "any natural person, whether or not still living, who received health care services from a provider of health care and to whom medical information pertains. Cal. Civ. Code § 56.05(k)." Plaintiffs and California Subclass members are "patients" under the CMIA.

296.    Under the CMIA, "authorized recipient" means "any person who is authorized to receive medical information pursuant to Section 56.10 or 56.20. Cal. Civ. Code § 56.05(b)." Planned Parenthood is a "authorized recipient" under the CMIA.

297.    Planned Parenthood stored in electronic form on its computer system Plaintiffs' and California Subclass members' "medical information" as defined by Cal. Civ. Code § 56.05(j).

298.    Planned Parenthood's systems were designed, in part, to make medical information available to Planned Parenthood so it could store, access, and manage patients' medical information, including but not limited to diagnosing, treating, or managing patients' medical conditions.

299.    Under the CMIA, "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization, except as provided in subdivision (b) or (c)." Cal. Civ. Code § 56.10(a).

300.    Planned Parenthood violated Cal. Civ. Code § 56.10(a) as Plaintiffs and California Subclass members did not provide Planned Parenthood authorization nor was Planned Parenthood otherwise authorized to disclose Plaintiffs' or California Subclass members' medical information to an unauthorized third-party.

301.    As a direct and proximate result of Planned Parenthood's violation of Cal. Civ. Code Section 56.10(a), Plaintiffs' and California Subclass members' medical information was viewed by an unauthorized third party.

302.    Planned Parenthood's unauthorized disclosures of Plaintiffs' and California Subclass members' medical information has caused injury to Plaintiffs and California Subclass members.

303.    In addition, Cal. Civil Code Section 56.101, subdivision (a), requires that every provider of health care "who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein."

304.   Further, "[a]n electronic health record system or electronic medical record system shall do the following:(A) Protect and preserve the integrity of electronic medical information; [and] (B) Automatically record and preserve any change or deletion of any electronically stored medical information. The record of any change or deletion shall include the identity of the person who accessed and changed the medical information, the date and time the medical information was accessed, and the change that was made to the medical information." Cal. Civ. Code § 56.101(b)(1)(A) – (B).

305.   Planned Parenthood failed to maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information contained therein because it disclosed to third parties Plaintiffs' and California Subclass members' highly sensitive and confidential e-PHI without consent.

306.   As described throughout this Complaint, Planned Parenthood also violated Cal. Civ. Code § 56.101(a) by negligently maintaining, preserving, and storing Plaintiffs' and California Subclass members' medical information inasmuch as it did not implement adequate security protocols to prevent unauthorized access to medical information, maintain an adequate electronic security system to prevent data breaches, or employ industry standard and commercially viable measures to mitigate the risks of any data the risks of any data breach or otherwise comply with HIPAA data security requirements.

307.   Planned Parenthood failed to protect and preserve the integrity of electronic medical information and automatically record and preserve any change or deletion of any electronically stored medical information.

308.   As a direct and proximate result of Planned Parenthood's violation of Cal. Civ. Code Section 56.101(a), Plaintiffs' and California Subclass members' medical information was viewed by an unauthorized third party.

---

CLASS ACTION COMPLAINT, CASE NO. _____

309.   Planned Parenthood's negligent maintenance, preservation, and storage of Plaintiffs' and California Subclass members' medical information has caused injury to Plaintiffs and California Subclass members.

310.   Accordingly, Plaintiffs and California Subclass members are entitled to: (1) nominal damages of $1,000 per violation; (2) actual damages, in an amount to be determined at trial; (3) statutory damages pursuant to 56.36(c); (4) punitive damages pursuant to Cal. Civ. Code Section 56.35; and (5) reasonable attorneys' fees and other litigation costs reasonably incurred.

**COUNT X**
**REQUEST FOR RELIEF UNDER THE DECLARATORY JUDGMENT ACT**
**28 U.S.C. § 2201, *et seq.***
**(On Behalf of the Nationwide Class)**

311.   Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

312.   Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

313.   An actual controversy has arisen in the wake of the data breach regarding Planned Parenthood's present and prospective common law and statutory duties to reasonably safeguard its patients' highly sensitive and confidential e-PHI and whether Planned Parenthood is currently maintaining data security measures adequate to protect Plaintiffs and Class members from further data breaches. Plaintiffs allege that Planned Parenthood's data security practices remain inadequate.

314.   Plaintiffs and Class members continue to suffer injury as a result of the compromise of their highly sensitive and confidential e-PHI and remain at

imminent risk that further compromises of their personal information will occur in the future.

315.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Planned Parenthood continues to owe a legal duty to secure consumers' highly sensitive and confidential e-PHI, to timely notify consumers of any data breach, and to establish and implement data security measures that are adequate to secure its patients' highly sensitive and confidential e-PHI.

316.   The Court also should issue corresponding prospective injunctive relief requiring Planned Parenthood to employ adequate security protocols consistent with law and industry standards to protect patients' highly sensitive and confidential e-PHI.

317.   If an injunction is not issued, Plaintiffs and Class members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another data breach is real, immediate, and substantial. If another breach at Planned Parenthood occurs, Plaintiffs and Class members will not have an adequate remedy at law, because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

318.   The hardship to Plaintiffs and Class members if an injunction does not issue greatly exceeds the hardship to Planned Parenthood if an injunction is issued. If another data breach occurs at Planned Parenthood, Plaintiffs and Class members will likely be subjected to substantial identify theft and other damages. On the other hand, the cost to Planned Parenthood of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Planned Parenthood has a pre-existing legal obligation to employ such measures.

319. Issuance of the requested injunction will serve the public interest by preventing another data breach at Planned Parenthood, thus eliminating the additional injuries that would result to Plaintiffs and the millions of consumers whose confidential information would be further compromised.

**COUNT XI**
**VIOLATION OF THE CALIFORNIA CONSUMER RECORDS ACT**
**Cal. Civ. Code § 1798.80** *et seq.*
**(On Behalf of the California Subclass)**

320. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

321. Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California [] whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person…" Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonably delay…"

322. The California Consumer Records Act ("CCRA") further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

323. Plaintiff and the California Subclass members are residents of California and are "consumers" within the meaning of California Civil Code § 1798.80(c).

324. Defendants are "business(es)" within the meaning of California Civil Code § 1798.80(a) which includes "a sole proprietorship, partnership, corporation,

association, or other group, however organized and whether or not organized to operate at a profit."

325.   The data breach was a breach of security within the meaning of section 1798.82.  The PHI and e-PHI stolen constitutes "personal information" within the meaning of California Civil Code §1798.80.

326.   Any person or business that is required to issue a security breach notification under the CCRA shall meet all of the following requirements:

    a.  The security breach notification shall be written in plain language;

    b.  The security breach notification shall include, at a minimum, the following information:

        i.  The name and contact information of the reporting person or business subject.

        ii.  A list of the types of personal information that were or are reasonably believed to have been the subject of a breach.

        iii.  If the information is possible to determine at the time the notice is provided, then any of the following:

            1.  The date of the breach;

            2.  The estimated date of the breach; or

            3.  The date range within which the breach occurred. The notification shall also include the date of the notice.

        iv.  Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided.

        v.  A general description of the breach incident, if that information is possible to determine at the time the notice is provided.

---

CLASS ACTION COMPLAINT, CASE NO. _____

vi.   The toll-free telephone number and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

327.   In violation of the CCRA, Defendants unreasonably delayed in notifying Plaintiffs and members of the California Subclass of the data breach, in which they were aware on or before October 17, 2021.

328.   As a result of Defendants' violation of Cal. Civ. Code § 1798.82(b), Plaintiff and California Subclass members were deprived of prompt notice of the data breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection, as well as future costs related to the same. These measures could have prevented some of the damages Plaintiff and California Subclass members have suffered and will suffer because their PHI and e-PHI would have had less value to identity thieves.

329.   As a result of Defendants' violation Cal. Civ. Code § 1798.82(b), Plaintiff and California Subclass members suffered incrementally increased damages separate and distinct from those simply caused by the data breach itself.

330.   Plaintiff and California Subclass members seek all remedies available under Cal. Civ. Code § 1798.82(b), including but not limited to the damages suffered by Plaintiff and California Subclass members as alleged above, and equitable relief.

## **RELIEF REQUESTED**

Plaintiffs, on behalf of all others similarly situated, request that the Court enter judgment against Defendants including the following:

A.   Determining that this matter may proceed as a class action and certifying the Classes asserted herein;

B.   Appointing Plaintiffs as representatives of the applicable Classes and appointing Plaintiffs' counsel as Class counsel;

---

CLASS ACTION COMPLAINT, CASE NO. _____

C.    An award to Plaintiffs and the Classes of compensatory, consequential, nominal, statutory, and treble damages as set forth above;

D.    Ordering injunctive relief requiring Defendants to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) provide several years of free credit monitoring and identity theft insurance to all Class members; and (iv) timely notify consumers of any future data breaches;

E.    Entering a declaratory judgment stating that Defendants owe a legal duty to secure consumers' e-PHI, to timely notify patients of any data breach, and to establish and implement data security measures that are adequate to secure patients' e-PHI;

F.    An award of attorneys' fees, costs, and expenses, as provided by law or equity;

G.    An award of pre-judgment and post-judgment interest, as provided by law or equity; and

H.    Such other relief as the Court may allow.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

Dated: December 10, 2021          /s/ Ronald A. Marron
                                  Ronald A. Marron (175650)
                                  Alexis M. Wood (270200)
                                  Kas L. Gallucci (288709)
                                  Lilach Halperin (323202)
                                  **LAW OFFICES OF RONALD A. MARRON**
                                  651 Arroyo Drive
                                  San Diego, CA 92103

Tel: (619) 696-9006
Fax: (619) 564-6665
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com
lilach@consumersadvocates.com

Christian Levis (pro hac vice forthcoming)
Amanda Fiorilla (pro hac vice forthcoming)
Rachel Isabel Kesten (pro hac vice
forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone:  (914) 997-0500
Fax:   (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

Anthony M. Christina (pro hac vice
forthcoming)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone:  (215) 399-4770
Fax:   (914) 997-0035
achristina@lowey.com

*Attorneys for Plaintiffs and the Proposed
Classes*

---

CLASS ACTION COMPLAINT, CASE NO. _____